# 05-40009 FDS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WM HIGH YIELD FUND, WM INCOME FUND, AT HIGH YIELD FUND, WM VT INCOME FUND, AT INCOME FUND, EVERGREEN FUNDING LTD/EVERGREEN FUNDING CORP., and STELLAR FUNDING, LTD., | : SUBPOENA DUCES TECUM IN A<br>: CIVIL CASE PENDING IN THE<br>: UNITED STATES DISTRICT COURT<br>: FOR THE EASTERN DISTRICT OF<br>: PENNSYLVANIA<br>: |
| Plaintiffs, | : |
| v. | :<br>: Case No. 04-CV-3423-LDD |
| MICHAEL A. O'HANLON, STEVEN R. GARFINKEL, RICHARD MILLER, ANTHONY J. TUREK, JOHN P. BOYLE, TERRY W. CADY, MATTHEW COLASANTI, RAYMOND FEAR, GERALD COHN, HARRY T.J. ROBERTS, WILLIAM S. GOLDBERG, JOHN E. MCHUGH, NATHAN SHAPIRO, DELOITTE & TOUCHE, LLP., HAROLD NEAS, ONCURE TECHNOLOGIES CORPORATION, JEFFREY GOFFMAN, PRESGAR IMAGING, LLC, and DOLPHIN MEDICAL, INC., | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

## MEMORANDUM OF LAW IN SUPPORT OF
## DELOITTE & TOUCHE LLP'S MOTION TO QUASH SUBPOENA *DUCES TECUM*
## ISSUED TO DENNIS J. BUCKLEY, TRUSTEE OF THE DVI LIQUIDATING TRUST,
## OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER

### INTRODUCTION

The above titled federal securities action was brought in the United States District Court

for the Eastern District of Pennsylvania by purchasers of certain bonds of DVI, Inc. ("DVI").

Defendants include former DVI officers and employees, members of DVI's Board of Directors,

and certain outside entities, including Deloitte & Touche LLP ("D&T"), DVI's former

independent auditor. DVI, which filed for bankruptcy on August 25, 2003, is not a party to this

action.

Plaintiffs served the Liquidating Trustee of DVI, a non-party to this action, with a subpoena *duces tecum* (the "Subpoena") issued out of the United States District Court for the District of Massachusetts on May 9, 2005. See Subpoena *Duces Tecum* attached as Exhibit "A". The Subpoena seeks, in part, certain confidential D&T documents[1] that are in the possession of the Liquidating Trustee.

In July 2004, the Official Committee of Unsecured Creditors ("Creditors' Committee") in DVI's bankruptcy proceeding in the United States Bankruptcy Court For the District of Delaware moved pursuant to Bankruptcy Rule 2004 to obtain certain documents from D&T. Although Bankruptcy Rule 2004, which allows discovery of the assets and financial condition of a debtor, permits broader discovery than that allowed under the Federal Rules of Civil Procedure *(In re Dinumilo*, 177 B.R. 932, 939-940 (E.D. Cal. 1993)), D&T opposed the motion, largely because the Creditors' Committee would not agree to restrictions on the use of D&T's documents that D&T believed were necessary to protect the confidentiality of such documents. In October 2004, The Honorable Mary F. Walrath, Chief United States Bankruptcy Judge, issued an order under Fed. R. Bankr. P. 2004 and Del. Bankr. LR 2004-1, granting some of the requested examination of D&T, but imposing restrictions on the use of D&T's confidential documents to be produced. See The Honorable Mary F. Walrath's 10/5/2004 Order ("Judge Walrath's Order") attached as Exhibit "B". For example, Judge Walrath's Order provided that D&T's confidential documents could only be used for the Chapter 11 bankruptcy proceedings and any litigation where the Creditor's Committee is a party and for no other purpose whatsoever, and could only be disclosed to certain "Qualified Persons." Id. at 2-3. The Liquidating Trustee gained possession of D&T documents produced to the Creditors' Committee pursuant to the First Amended Joint

---

[1]    For ease of reference, D&T "documents" refers to and includes documents, information, and testimony.

2

Plan of Liquidation of DVI, Inc., et al, which transferred all claims and pending investigations from the Creditors' Committee to the Liquidating Trustee and bound him to the restrictions of Judge Walrath's Order.

D&T's Motion to Quash or in the Alternative for Protective Order must be granted for three principal reasons. <u>First</u>, any production of D&T's confidential documents by the Liquidating Trustee to Plaintiffs in this action would violate Judge Walrath's Order. Judge Walrath ordered that documents designated by D&T as confidential are not to be disclosed or discussed except with enumerated persons or entities and may be used only in DVI's bankruptcy action or litigation where the Creditors' Committee is a party. <u>See</u> Exhibit "B". Plaintiffs are not among the entities permitted to use or receive D&T's confidential documents pursuant to Judge Walrath's Order, nor is the Creditors' Committee (or the Liquidating Trustee) a party to this action. Id. Accordingly, the Subpoena must be quashed.

<u>Second</u>, because the parties have not yet conferred as required by Federal Rule of Civil Procedure 26(f), the Subpoena is a premature discovery request prohibited by Federal Rule of Civil Procedure 26(d).

<u>Third</u>, to the extent this Court deems it appropriate to modify Judge Walrath's Order to allow the Liquidating Trustee to produce D&T's confidential documents to plaintiffs, this Court should order that Plaintiffs' use of such documents be subject to restrictions similar to those set forth in Judge Walrath's Order in order to protect the confidential nature of those documents. For example, this Court should not permit Plaintiffs to use D&T's confidential documents for any purpose other than this litigation. Additionally, Plaintiffs should not be permitted to share the confidential documents and information with litigants in other actions.

## I.    THE SUBPOENA MUST BE QUASHED

Plaintiffs' Subpoena must be quashed because (1) production of D&T's confidential documents by the Liquidating Trustee to Plaintiffs would be in direct violation of Judge Walrath's Order; and (2) the Subpoena is a premature discovery request prohibited by the Federal Rules of Civil Procedure.

### A.    Production of D&T's Confidential Documents By The Liquidating Trustee Would Violate Judge Walrath's Order.

Production to Plaintiffs of D&T's confidential documents in the possession of the Liquidating Trustee would be in direct violation of Judge Walrath's Order.[2]  A subpoena should be quashed to the extent necessary to give effect to another court's protective order.  Kimberly-Clark Corp., 1999 U.S. Dist. LEXIS 17563 at *3-4; see also Dushkin Publishing Group, Inc., 136 F.R.D. 334 (granting motion to quash because documents requested were subject to another court's protective order); Dart Indust., Inc., 50 F.R.D. 286 (granting motion to quash to the extent confidential documents were subject to another court's protective order).  Principles of comity and respect for the effect of preexisting judicial orders demand that a court refrain from modifying another court's protective order.  Dushkin Publishing Group, 136 F.R.D. at 335-336; Donovan v. Lewnoski, 221 F.R.D. at 587, 588 (S.D.N.Y. 2004) (comity and courtesy restrain a court from modifying protective orders issued by another court); Kimberly-Clark Corp., 1999 U.S. Dist. LEXIS 17563 at *3-4 (comity principles mandate deference to another court's

---

[2]    D&T has standing to quash or modify the Subpoena to protect D&T's confidential documents and seek enforcement of Judge Walrath's Order.  A party claiming a right or privilege in documents sought from a third party has standing to contest a subpoena.  Kimberly-Clark Corp. v. Baxter Healthcare Corp., 1999 U.S. Dist. LEXIS 17563, *3 (N.D. Ill. Dec. 9, 1993).  This requirement is met when a party seeks to protect confidential documents subject to a protective order issued by another court.  Id.; Dushkin Publishing Group, Inc. v. Kinko's Serv. Corp., 136 F.R.D. 334 (D. D.C. 1991); Dart Indust., Inc. v. Liquid Nitrogen Processing Corp., 50 F.R.D. 286 (D. Del. 1970).  Plaintiffs' demands production of D&T documents that were produced pursuant to an order that prohibits the divulgence of confidential documents except for limited purposes.  D&T has standing to protect the confidentiality of its documents and to enforce Judge Walrath's Order.

protective order). The proper forum to challenge or seek modification of a protective order is the issuing court. <u>Dushkin Publishing Group</u>, 136 F.R.D. at 335-336.

Under Judge Walrath's Order, only certain defined "Receiving Parties" are permitted access to D&T's confidential documents. <u>See</u> Exhibit "B" at 2. Receiving Parties are permitted to use D&T's confidential documents only in DVI's Chapter 11 case and litigation where the Creditors' Committee is a party (the "Permitted Purposes"). <u>Id</u>. Receiving Parties are prohibited from disclosing or discussing D&T's confidential documents except with certain individuals and entities defined as "Qualified Persons" and this disclosure or discussion shall only be made in connection with Permitted Purposes. <u>Id</u>. at 2-3.

Plaintiffs are neither a Receiving Party nor a Qualified Person under the Order. Further, use of D&T's confidential documents in the above titled litigation is not a Permitted Purpose. In the interests of comity, courtesy, and respect for Judge Walrath's Order, this court must quash the Subpoena to the extent it purports to require production to plaintiffs of D&T's confidential documents by the Liquidating Trustee.[3] Likewise, any attempt to challenge or modify Judge Walrath's Order must be directed to the issuing court, the United States Bankruptcy Court For the District of Delaware.

**B.     The Subpoena Is A Premature Discovery Request Prohibited By The Federal Rules Of Civil Procedure**

The Subpoena must be quashed for the independent reason that the parties have not held a conference pursuant to Federal Rule of Civil Procedure 26(f). "[A] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). In <u>Parker v. Learn the Skills Corp.</u>, 2004 U.S. Dist. LEXIS 21498, *6-8 (E.D. Pa.

---

[3]     On May 18, 2005, plaintiffs served D&T with plaintiffs' first request for production of documents, which seek directly from D&T many of the same documents that plaintiffs seek from the Liquidating Trustee. In addition to the reasons set forth herein, plaintiffs' subpoena should be quashed as duplicative and as an inappropriate attempt to circumvent D&T's objections to these requests.

2004), the Court addressed this precise issue and quashed a subpoena *duces tecum* served by plaintiffs on a non-party, holding that "it constitutes a premature discovery request prohibited by Rule 26(d)." The parties have not held a Rule 26(f) conference in this case, and as such, the Subpoena must be quashed.

## II.    TO THE EXTENT THIS COURT PERMITS PRODUCTION OF D&T'S CONFIDENTIAL DOCUMENTS, A PROTECTIVE ORDER SHOULD BE ENTERED

To the extent this Court deems it appropriate to modify Judge Walrath's Order to permit the Liquidating Trustee to produce D&T's confidential documents to plaintiffs, this Court should order Plaintiffs to treat any documents and information as confidential and not permit Plaintiffs to use the confidential documents in any other litigation or share the confidential documents and information with litigants in other actions. The court by which a subpoena was issued shall quash or modify a subpoena if it "requires disclosure of a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i); see also Anderson v. Cryovac, Inc., 805 F.2d 1, 19 (1st Cir. 1986) (a protective order is appropriate where good cause is shown); Quotron Systems, Inc. v. Automatic Data Processing, Inc. 141 F.R.D. 37, 40 (S.D.N.Y. 1992) ("[p]rotective orders that limit access to certain documents to counsel and experts only are commonly entered in litigation involving trade secrets and other confidential research, development, or commercial information").

As Judge Walrath's Order recognized, a protective order limiting the disclosure and use of D&T's confidential documents is necessary and appropriate to protect the proprietary information, trade secrets or other confidential research, development or commercial information of D&T reflected in such documents. For example, D&T's confidential documents protected by Judge Walrath's order include, among other things, proprietary plans, audit programs, checklists, and internal forms which are not publicly available and have been developed at great expense to

and effort by D&T. Further, the policies, procedures, and methods utilized by D&T constitute substantial commercial value that would undoubtedly be lost if these documents were disclosed. Accordingly, in the alternative, this Court should order any production of D&T's documents by the Liquidating Trustee (i) to be treated as confidential, (ii) to be used for purposes of the above-captioned matter only, and (iii) not disclosed to any persons except those identified in paragraphs (a), (b), (f) and (g) of page 3 of Judge Walrath's Order, and other counsel representing plaintiffs in this matter.

## CONCLUSION

For each of the foregoing reasons, D&T requests that this Court quash the Subpoena

*Duces Tecum* issued to the Liquidating Trustee by Plaintiffs to the extent it calls for the

production of D&T's confidential documents. In the alternative, D&T requests that this Court

order Plaintiffs to treat any D&T documents produced by the Liquidating Trustee as confidential.

Dated: May 31, 2005                                  Respectfully Submitted,

                                                     *Edward Fernandez* J.S.

                                                     Edward F. Fernandes
                                                     Akin Gump Strauss Hauer & Feld LLP
                                                     300 Convent Street
                                                     Suite 1500
                                                     San Antonio, TX 78205-3732
                                                     Phone (210) 281-7000
                                                     Facsimile (210) 224-2035
                                                     Admitted in The United States District Court
                                                     for the District of Massachusetts

                                                     Edward F. Mannino
                                                     David L. Comerford
                                                     Jeffery A. Dailey
                                                     Jeffrey A. Sturgeon
                                                     Akin Gump Strauss Hauer & Feld LLP
                                                     One Commerce Square
                                                     2005 Market Street, Suite 2200
                                                     Philadelphia, PA 19103
                                                     Phone (215) 965-1200
                                                     Facsimile (215) 965-1210

                                                     Counsel For Defendants
                                                     Deloitte & Touche LLP and Harold Neas

## CERTIFICATE OF SERVICE

I, Jeffrey A. Sturgeon, hereby certify that on the 31st day of May, 2005, a true and correct

copy of Deloitte & Touche LLP's Motion to Quash Subpoena *Duces Tecum* Issued to Dennis J.

Buckley, Trustee of the DVI Liquidating Trust, Or In the Alternative, Motion For Protective

Order, and memorandum of law in support thereof, was served upon the following via U.S. Mail:

Stuart M. Grant
David E. Sellinger
John A. Curseaden
James P. McEvilly
Lauren E. Wagner
Grant & Eisenhofer PA
Chase Manhattan Centre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for Plaintiffs*

Robert L. Hickok
Elizabeth S. Campbell
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
*Counsel for Presgar Imaging, LLC*

Richard L. Scheff
Jeffrey S. Feldman
Montgomery McCracken Walker &
Rhoads LLP
123 S. Broad Street
Philadelphia, PA 19109
*Counsel for Michael A. O'Hanlon*

Maura E. Fay
Christine Callahan
Dawn N. Zubrick
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
*Counsel for Steven R. Garfinkel*

Robert E. Kelly
Matthew A. Taylor
Patrick J. Loftus
Kelly D. Eckel
Duane Morris LLP
One Liberty Place
1650 Market Street
Philadelphia, PA 19103
*Counsel for John P. Boyle and
Raymond Fear*

Daniel Segal
Matthew A. Hammermesh
Bruce S. Haines
Paul W. Kaufman
Hangley Aronchick Segal & Pudlin
One Logan Square
27th Floor
Philadelphia, PA 19103
*Counsel for Terry W. Cady and Matthew
Colasanti*

David S. Hoffner
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel for Oncure Technologies
Corporation and Jeffrey Goffman*

Alessandro Martuscelli
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103
*Counsel for Oncure Technologies
Corporation and Jeffrey Goffman*

John E. Riley
Vaira & Riley, P.C.
1600 Market Street
Suite 2650
Philadelphia, PA 19103-7226
*Counsel for Oncure Technologies*
*Corporation and Jeffrey Goffman*

William P. Quinn, Jr.
Karen Pieslak Pohlmann
David W. Marston, Jr.
Marc J. Sonnenfeld
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
*Counsel for William S. Goldberg, John*
*E. McHugh, Nathan Shapiro*

William J. Taylor
Kevin F. Berry
Stuart M. Grant
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
*Counsel for Anthony J. Turek*

Patricia M. Hamill
James J. Rohn
Paul J. Greco
Conrad, O'Brien, Gellman & Rohn,
P.C.
1515 Market Street
16th Floor
Philadelphia, PA 19102-1916
*Counsel for Richard Miller*

Gregory P. Miller
Michael A. Morse
David M. Laigaie
Stephen G. Stroup
Miller, Alfano & Raspanti, P.C.
1818 Market Street
Suite 3402
Philadelphia, PA 19103
*Counsel for Harry T. J. Roberts*

Leah J. Domitrovic
Katten, Muchin, Zavis, Rosenman
Suite 1600
525 West Monroe Street
Chicago, IL 60661-3693
*Counsel for Dolphin Medical, Inc.*

Jeffrey S. Saltz, Esquire
Law Offices of Jeffrey S. Saltz, P.C.
1515 Market Street, Suite 1000
Philadelphia, PA 19102
*Counsel for Dolphin Medical, Inc.*

Mark Weyman
John L. Scott
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
*Counsel for Dennis J. Buckley,*
*Liquidating Trustee*

Jeffrey A. Sturgeon

2

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| WM HIGH YIELD FUND, WM INCOME FUND, AT HIGH INCOME FUND, WM VT HIGH INCOME FUND, AT INCOME FUND, EVERGREEN FUNDING LTD/ EVERGREEN FUNDING CORP., and STELLAR FUNDING, LTD., <br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL A. O'HANLON, STEVEN R. GARFINKEL, RICHARD MILLER, ANTHONY J. TUREK, JOHN P. BOYLE, TERRY W. CADY, MATTHEW COLASANTI, RAYMOND FEAR, GERALD COHN, HARRY T.J. ROBERTS, WILLIAM S. GOLDBERG, JOHN E. MCHUGH, NATHAN SHAPIRO, DELOITTE & TOUCHE, LLP, HAROLD NEAS, ONCURE TECHNOLOGIES CORPORATION, JEFFREY GOFFMAN, PRESGAR IMAGING, LLC, and DOLPHIN MEDICAL INC., <br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 04-3423-LDD |

## NOTICE OF THE ISSUANCE OF A SUBPOENA *DUCES TECUM*

**TO:    ALL COUNSEL ON THE ATTACHED SERVICE LIST**

PLEASE TAKE NOTICE that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs are serving **Dennis J. Buckley, Trustee of the DVI Liquidating Trust** with a subpoena *duces tecum* commanding him to produce documents or other tangible things set forth in the attached Schedule.

Dated: May 9, 2005
      Wilmington, Delaware

Respectfully submitted,

_____
Stuart M. Grant
David E. Sellinger
James P. McEvilly, III
Lauren E. Wagner
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Telephone:  (302) 622-7000
Facsimile:  (302) 622-7100

Counsel for Plaintiffs

AO 88 (Rev. 1/94) Subpoena in a Civil Action -

Issued by the

# United States District Court

## District of Massachusetts

WM HIGH YIELD FUND, et al.

v.

MICHAEL A. O'HANLON, et al.

SUBPOENA DUCES TECUM
IN A CIVIL CASE IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF
PENNSYLVANIA

CASE NUMBER:  **04-CV-3423-LDD**

TO:   Dennis J. Buckley, Trustee of the DVI Liquidating Trust
The Buckley Group
29 Daley Circle
Marlborough, MA 01752

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): **(See Documents Requested attached)**

| | DATE AND TIME |
|---|---|
| Embassy Suites Hotel  Boston-Marlborough<br>123 Boston Post Road West<br>Marlborough, MA 01752 | May 31 2005 at 10:00 a.m. |

YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)                    (Plaintiffs) | DATE<br>May 9, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
James P. McEvilly, III, Esquire, Grant & Eisenhofer, P.A., 1201 N. Market Street, Suite 2100, Wilmington, DE 19801-2599, 302-622-7000

**PROOF OF SERVICE**

| DATE SERVED _____ _____, 2005 | PLACE |
|---|---|

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

**DECLARATION OF SERVER**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____ 2005
            DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)  fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or
    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
    (iv) Subjects a person to undue burden.

(B) If a subpoena

    (i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not a t the request of any party, or
    (iii) requires a person who is not a arty or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may

order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT TO SUBPOENA DIRECTED TO DVI, INC.

## I.    DEFINITIONS

As used herein:

1.    The term "Documents" includes a copy or duplicate of a document which has any non-conforming notes, marginal annotations or other markings; any preliminary version, draft or revision of the foregoing is a separate document within the meaning of this term.  "Documents" includes, but is not limited to, any memorandum, letter, envelope, correspondence, electronic mail, report, note, Post-it, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group schedule calendar, drawing, painting, accounting paper, minutes, working paper, financial report, contract, invoice, record of purchase or sale, chart, graph, index, directory, computer directory, computer disk, computer tape, or any other written, printed, typed, punched, taped, filmed, or graphic matter however produced or reproduced. "Documents" also includes the file, folder tabs, and labels appended to or containing any documents and any drafts of such documents.

"Documents" also includes "electronic data," which means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of mechanical, facsimile, electronic, magnetic, digital, or other programs (whether private, commercial or work-in-progress); activity listings of electronic mail receipts and/or transmittals; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines; electronic mail; operating systems; source code of all types; programming languages; linkers and

compilers; peripheral drivers; PRF files; batch files; ASCII files; crosswalks; code keys; pull-down tables; logs; file layouts; and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment, including drafts of such documents. "Electronic data" includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, zip drives, Bernoulli Boxes and their equivalents, magnetic tape of all types, microfiche, punched cards, punched tape, computer chips (including but not limited to EPROM, PROM, RAM and ROM) on or in any other vehicle for digital data storage and/or transmittal. "Electronic data" also includes the files, folder tabs, and/or containers appended to, or associated with, any physical storage device associated with each original and/or copy.

2.    "You," "your" and "yours" refer to DVI, Inc. and all other persons purporting to act on DVI, Inc.'s behalf.

3.    "Relating to," "relate to," "concern" and "concerning" mean reflecting, referring to, having any relationship to, pertaining to, evidencing, or constituting, in whole or in part, the subject matter of the particular request.

4.    "Communication," "communicate," and "communicated" refer to any oral or written utterance, notation or statement of any nature whatsoever, by or to whomever made, including but not limited to correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, and other understandings, between two or more persons.

5.    "Meeting," "meet," and "met" refer to any assembly, convocation, encounter, or contemporaneous presence of two or more persons for any purpose, whether or not planned, arranged or scheduled in advance, during which a communication of any kind occurred, and

includes but is not limited to formal and informal gatherings, conversations, video conferences and telephone calls.

6. "Policy" means any practice, procedure, directive, routine, rule, course of conduct or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which was recognized, adopted, issued, or followed by you.

7. "Financial statements" means, but is not limited to, the following, whether audited or unaudited, and whether final, interim, *pro forma*, complete, or partial: consolidated and nonconsolidated balance sheets, statements of earnings, statements of additional paid-in capital, statements of retained earnings, statements of source and application of funds, statements of cash flow, projections, and notes that pertain to DVI, Inc. (defined below) past or present financial condition, including accountant's work papers.

8. "DVI" refers to DVI, Inc., its predecessors, successors, parents, consolidated and unconsolidated subsidiaries, divisions, affiliates, operating units, controlling persons, controlled persons, officers, directors, employees, representatives and agents.

9. "Deloitte" refers to Deloitte & Touche, LLP, its predecessors, successors, parents, divisions, affiliates, officers, directors, employees, representatives and agents.

10. "Individual Defendants" refers to O'Hanlon, Garfinkel, Miller, Turek, Boyle, Cady, Colasanti, Fear, Cohn, Roberts, Goldberg, McHugh and Shapiro and all agents, attorneys, and representatives and all other persons purporting to act on their respective behalf.

11. "Bonds" refers to the Senior Notes purchased by Plaintiffs as set forth in the Complaint in this action, specifically 9-7/8% Senior Notes due February 2004, which were issued by DVI (defined below) in 1997; and 9-7/8% Senior Notes due February 2004, which were issued by DVI (defined below) in 1998 (collectively, the "Bonds").

12.    Words used in the plural include the singular, and words used in the singular include the plural.

13.    The words "and" and "or" shall be used interchangeably and interpreted in the most inclusive manner possible.

14.    For the purpose of responding to this document request, the terms shall be given their most expansive and inclusive interpretation, unless otherwise specifically limited by the language of an individual request.

## II.    INSTRUCTIONS

1.    All documents shall be produced in the order they are kept in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof.

2.    These requests relate to all documents which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or your respective officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

3.    You shall produce the original of each document described below or, if the original is not in your custody, then a copy thereof, and in any event, all non-identical copies which differ from the original or from the other copies produced for any reason, including, but not limited to, the making of notes thereon.

6.    If production of documents is withheld on the ground of privilege, as to each such withheld document provide the following information no later than the first date on which documents are produced:

    (a)       Which privilege is claimed;

    (b)       The following information describing each purportedly privileged document:

           (i)      Its nature, e.g., agreement, letter, memorandum, tape, etc.;

           (ii)     Its subject matter;

           (iii)    The date it was prepared;

           (iv)    The date it was received;

           (v)     The identity of the person preparing it;

           (vi)    The identity of the person sending it;

           (vii)   The identity of the person to whom it was sent or was to have been sent, including all addresses and all recipients of copies; and

           (viii)  A statement as to whom each identified person represented or purported to represent at all relevant times; and

    7.       Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found, and the business address of each document's custodian(s).

    8.       Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

    9.       If a document responsive to these requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

    (a)       Whether the document is missing or lost;

(b)    Whether the document has been destroyed;

(c)    Whether the document has been transferred or delivered to another person and, if so, at whose request;

(d)    Whether the document has been otherwise disposed of; and

(e)    A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

**III.    RELEVANT TIME PERIOD**

These requests refer to the period from January 1, 1997 to the present (the "Relevant Time Period"), unless otherwise specifically indicated.

**IV.    DOCUMENTS TO BE PRODUCED**

REQUEST FOR PRODUCTION NO.1:

All documents produced by DVI or on behalf of DVI to the United States Securities & Exchange Commission.

REQUEST FOR PRODUCTION NO.2:

All documents produced by DVI or on behalf of DVI to DVI's court appointed bankruptcy examiner.

REQUEST FOR PRODUCTION NO.3:

All documents produced by DVI or on behalf of DVI to any state or federal regulatory or law enforcement agency or court-related officer, entity or body (e.g., a grand jury).

REQUEST FOR PRODUCTION NO.4:

All documents produced by DVI or on behalf of DVI to the DVI Committee of Unsecured

Creditors and/or the DVI Liquidating Trust.


REQUEST FOR PRODUCTION NO.5:

All documents produced by DVI or on behalf of DVI in connection with any and all internal

investigations at DVI, including any such internal investigation conducted by outside counsel for

DVI.


REQUEST FOR PRODUCTION NO. 6:

All minutes, agendas, hand-outs, resolutions, board packets, notes and other documents

from all meetings of DVI's Board of Directors.


REQUEST FOR PRODUCTION NO. 7:

All minutes, agendas, hand-outs, resolutions, board packets, notes and other documents

from all meetings of the Audit Committee of DVI's Board of Directors.


REQUEST FOR PRODUCTION NO. 8:

All documents reflecting, referring or relating to meetings, including meetings of the DVI

Board of Directors or any of its committees or subcommittees (including the Audit Committee

and Executive Committee), in which one or more of the following subjects was discussed:

(a)     DVI's accounting practices or policies;

(b)     DVI financial statements;

(c)     public announcement that DVI would file for bankruptcy;

(d)    the reason(s) for DVI filing for bankruptcy;

(f)    errors and/or irregularities in DVI's financial statements;

(g)    the failure of DVI employees and/or officers to comply with established accounting policies;

(l)    reportable conditions which existed at DVI;

(m)    the Bonds.

(n)    Deloitte or any decision or action being taken or under consideration by Deloitte regarding DVI; or

(o)    OnCure Technologies Corporation, Jeffrey Goffman, Presgar Imaging, LLC or Dolphin Medical, Inc.

This request shall include draft, preliminary and final notes; memoranda; minutes; agendas; resolutions; audio or video tape recordings of any such meetings; documents distributed prior to, at, or used in connection with any such meetings, including exhibits and briefing books; and all communications generated by or on behalf of, or received by you in connection with such meetings.

REQUEST FOR PRODUCTION NO. 9:

All documents relating to or reflecting errors and/or irregularities in DVI's financial statements.

REQUEST FOR PRODUCTION NO. 10:

All documents reflecting or relating to the failure of DVI employees and/or officers to comply with established accounting policies.

REQUEST FOR PRODUCTION NO. 11:

All reports concerning DVI's sales, revenues, expenses, operating costs, gross margins, operating margins, cash flow, good will, working capital and/or debt levels.

REQUEST FOR PRODUCTION NO. 12:

All documents reflecting or relating to any comparisons of or variances between DVI's actual business or financial performance and its expected, planned, budgeted, or forecasted performance. This request shall include any documents reflecting company-wide performance, or less than company-wide performance (i.e. division, business segment, or market).

REQUEST FOR PRODUCTION NO. 13:

All documents relating to the preparation of DVI's financial statements.

REQUEST FOR PRODUCTION NO. 14:

All documents relating to meetings, communications and exchanges of information between DVI and Deloitte. Such documents shall include but not be limited to: all reports and supporting schedules relating to such meetings and/or communications; memoranda; e-mails; agendas; all documents distributed prior to, at, or utilized in connection with any such communications or meetings, including briefing books, summaries and audit planning documents; and all notes taken during such meetings.

REQUEST FOR PRODUCTION NO. 15:

All documents relating to meetings, communications and exchanges of information between DVI and Merrill Lynch where the subject of those meetings or communications related to DVI's financial condition or the Bonds. Such documents shall include but not be limited to: all reports and supporting schedules relating to such meetings and/or communications; memoranda; e-mails; agendas; all documents distributed prior to, at, or utilized in connection with any such communications or meetings, including briefing books, summaries and audit planning documents; and all notes taken during such meetings.

REQUEST FOR PRODUCTION NO. 16:

All documents relating to meetings, communications and exchanges of information between the internal audit department of DVI and any other person in connection with DVI's financial reporting, accounting, information systems, or internal controls. Such documents shall include but not be limited to: all reports and supporting schedules relating to such meetings and/or communications; memoranda; e-mails; agendas; all documents distributed prior to, at, or utilized in connection with any such communications or meetings, including briefing books, summaries and audit planning documents; and all notes taken during such meetings.

REQUEST FOR PRODUCTION NO. 17:

All documents concerning the performance, adequacy and reliability of DVI's financial reporting, accounting, information systems, or internal controls.

REQUEST FOR PRODUCTION NO. 18:

All documents provided to or by Deloitte, and all documents reflecting communications with Deloitte.

REQUEST FOR PRODUCTION NO. 19:

All documents reflecting or relating to journal entries and adjustments recorded or approved by any of the defendants.

REQUEST FOR PRODUCTION NO. 20:

All documents reflecting or relating to DVI's accounting practices, policies and procedures.

REQUEST FOR PRODUCTION NO. 21:

All documents concerning sensitivity analyses performed prior to August 1, 2003 to test the impact of proposed or actual adjustments or changes to DVI's financial statements.

REQUEST FOR PRODUCTION NO. 22:

All documents relating to the offering and sale of the Bonds, including but not limited to:

     (a)    the Offering Memorandum, Prospectus, and Registration Statement for the Bonds, including any and all drafts thereof and any correspondence relating to such drafts;

     (b)    road show schedules and presentation materials;

     (c)    all other documents relating to the marketing of the Bonds;

(d)    a list of all initial offering purchasers of the Bonds, and the par amount purchased by each;

(e)    all correspondence between DIV, on the one hand, and, any underwriters and/or Deloitte, on the other hand, relating to the Bonds;

(f)    documents reflecting or relating to any and all due diligence conducted by Deloitte or any underwriters in connection with the offering of the Bonds; and

(g)    documents reflecting or relating to any communications between DVI and investors or potential investors regarding the Bonds.

## REQUEST FOR PRODUCTION NO. 23:

All documents relating to the Charter of the Audit Committee of DVI's Board of Directors, including all drafts, revisions or proposed revisions thereof.

## REQUEST FOR PRODUCTION NO. 24:

All documents reflecting or pertaining to any communications between DVI's Board of Directors, any committee or subcommittee thereof, or any agent or attorney acting on its behalf, and the Securities and Exchange Commission, the United States Department of Justice, or any law enforcement agency regarding DVI or any of the Individual Defendants.

REQUEST FOR PRODUCTION NO. 25:

All documents consisting of, constituting or reflecting statements, testimony, or documents created in connection with any investigation (internal or external), inquiry (internal or external) or legal proceeding relating to DVI.

REQUEST FOR PRODUCTION NO. 26:

All documents reflecting any agreement between DVI and: (a) any of the defendants in this action; or (b) any governmental entity conducting an inquiry or investigation of DVI or any of its employees or officers.

REQUEST FOR PRODUCTION NO. 27:

All witness statements relating in any manner to the subject matter of the Complaint in this action.

REQUEST FOR PRODUCTION NO. 28:

All policies of insurance which you contend provide coverage for the claims in the Complaint in this action.

REQUEST FOR PRODUCTION NO. 29:

Documents sufficient to show the claims numbers and number of all claims which you contend have been made under each policy of insurance identified in your response to request No. 28

REQUEST FOR PRODUCTION NO. 30:

All documents referencing or relating to DVI's relationship with OnCure Technologies Corporation, Jeffrey Goffman, Presgar Imaging, LLC and/or Dolphin Medical, Inc.

GRANT & EISENHOFER P.A.

Stuart M. Grant (Bar No. 73482)
David E. Sellinger
John A. Curseaden
James P. McEvilly (Bar No. 74072)
Lauren E. Wagner
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
(302) 622-7000

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2005, a copy of the foregoing NOTICE OF THE ISSUANCE OF A SUBPOENA DUCES TECUM was served via First Class United States Mail upon the following:

Richard L. Scheff, Esquire
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street - 28th Floor
Philadelphia, PA 19109
*Counsel to Michael A. O'Hanlon*

Patrick J. Loftus, Esquire
Kelly D. Eckel, Esquire
Matthew A. Taylor, Esquire
Robert E. Kelly, Esquire
DUANE MORRIS, LLP
One Liberty Place, Suite 4200
Philadelphia, PA 19103
*Counsel to John P. Boyle and Raymond Fear*

Maura E. Fay, Esquire
Christine Callahan, Esquire
Dawn N. Zubrick, Esquire
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
*Counsel to Steven R. Garfinkel*

Daniel Segal, Esquire
Matthew A. Hammermesh, Esquire
Bruce S. Haines, Esquire
HANGLEY ARONCHICK SEGAL & PUDLIN
One Logan Square, 27th Floor
Philadelphia, PA 19103
*Counsel to Terry W. Cady, Matthew Colasanti*

Julian W. Friedman, Esquire
Maureen Nakly, Esquire
STILLMAN & FRIEDMAN, P.C.
425 Park Avenue
New York, New York 10022

David M. Laigaie, Esquire
Gregory P. Miller, Esquire
Michael A. Morse, Esquire
MILLER, ALFANO & RASPANTI, P.C.
1818 Market Street - Suite 3402
Philadelphia, PA 19103
*Counsel to Harry T.J. Roberts*

Marc J. Sonnenfeld, Esquire
William P. Quinn, Jr., Esquire
Karen Pieslak Pohlmann, Esquire
David W. Marston, Jr., Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
*Counsel to William S. Goldberg, John E. McHugh, Nathan Shapiro*

William J. Taylor, Esquire
Kevin Berry, Esquire
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
*Counsel to Anthony Turek*

James R. Rohn, Esquire
Patricia M. Hamill, Esquire
Paul G. Greco, Esquire
CONRAD O'BRIEN GELLMAN & ROHN, P.C.
1515 Market Street - 16th Floor
Philadelphia, PA 19102-1916
*Counsel to Richard Miller*

Edward F. Mannino, Esquire
David L. Comerford, Esquire
Jeffrey A. Dailey, Esquire
Suzanne Marie Sweeney, Esquire
AKIN, GUMP, STRAUSS, HAUER & FELD LLP
One Commerce Square - Suite 2200
2005 Market Street
Philadelphia, PA 19103
*Counsel to Deloitte & Touche, LLP amd
Harold Neas*

Stuart J. Chanen, Esquire
Leah J. Domitrovic, Esquire
Matthew J. Cannon, Esquire
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street - Suite 1600
Chicago, IL 60661-3693
*Counsel to Dolphin Medical*

David S. Hoffner, Esquire
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
*Counsel to Oncure Technologies
Corporation and Jeffrey Goffman*

Michael E. Baughman, Esquire
Alessandro Martuscelli
DECHERT LLP
1717 Arch Street
4000 Bell Atlantic Tower
Philadelphia, PA 19103
*Counsel to Oncure Technologies
Corporation*

Elizabeth S. Campbell, Esquire
Robert L. Hickok, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
*Counsel to Presgar Imaging, LLC*

William J. Leonard, Esquire
OBERMAYER REBMANN
 MAXWELL & HIPPEL LLP
One Penn Center, 19th Floor
1617 JFK Boulevard
Philadelphia, PA 19103-1895
*Counsel to Gerald Cohn*

Jeffrey S. Saltz, Esquire
LAW OFFICE OF JEFFREY S. SALTZ, P.C.
1515 Market Street – Suite 1000
Philadelphia, PA 19102
*Counsel to Dolphin Medical*

James P. McEvilly

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DVI, INC., *et al.*<br><br>           Debtors. | Chapter 11<br><br>Case Nos. 03-12656 through 03-12658<br><br>(Jointly Administered)<br><br>Refers to Docket No. 2115 |

### ORDER GRANTING OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR AN ORDER AUTHORIZING THE EXAMINATION OF DELOITTE AND TOUCHE LLP PURSUANT TO BANKRUPTCY RULE 2004

The Official Committee of Unsecured Creditors (the "Committee") of DVI, Inc., et al. (the "Debtors"), having moved this Court for the entry of an order authorizing the examination of Deloitte and Touche LLP ("Deloitte") pursuant to Fed. R. Bankr. P. 2004 and Del. Bankr. LR 2004-1 (the "Motion"); and responses to the motion having been filed (i) on July 30, 2004 [Docket No. 2173] by Toshiba America Medical Systems, Inc. ("Toshiba"), (ii) on August 20, 2004 [Docket No. 2240] by Nomura Credit & Capital, Inc., XL Capital Assurance Inc. and Harris Nesbitt Corp. (collectively, the "Noteholders"), and (iii) on September 1, 2004 [Docket No. 2272] by Deloitte (hereinafter, the "Deloitte Response"); and the Motion having been considered by the Court at a hearing on September 9, 2004 (the "Hearing"); and the Court having made its ruling on the Motion at the Hearing, it is

NOW, upon motion of the Committee

ORDERED, that the Motion be, and it hereby is, granted to the extent set forth herein; and, it is further

37110

**ORDERED,** that the Committee is authorized to conduct an examination of the Deloitte representative most knowledgeable about the accounting services that Deloitte provided to the Debtors (the "Examination") at the Law Offices of Monzack & Monaco, P.A. ("Monzack & Monaco"), 1201 N. Orange Street, Suite 400, Wilmington, Delaware, 19801, on a date that is not more than thirty days after Deloitte produces to the Committee, Toshiba and the Noteholders documents in accordance with this Order, and reasoneble notice thereof is given to the Noteholders and Toshiba; and, it is further,

**ORDERED,** that Deloitte shall make the documents referred to in paragraph 8 of Deloitte's Response (the "Documents") available to counsel for the Committee, Toshiba, and the Noteholders and the other defendants (collectively with the Noteholders, the "REC III Defendants") in "The Official Committee of Unsecured Creditors of DVI, Inc., *etc.* v. DVI Business Credit Receivables Corp. III, *et al.*" U.S. Bankruptcy Court for the District of Delaware, Adversary Proceeding No. 03-57446-MFW (counsel for the Committee, Toshiba and the REC III Defendants collectively, "the Receiving Persons") within 30 days of the date of this Order; and, it is further

**ORDERED,** that the Documents and the Examination shall be used by the Receiving Persons solely for these Chapter 11 cases and any litigation where the Creditor's Committee is a party (the "Permitted Purposes") and for no other purpose whatsoever; and, it is further

**ORDERED,** that Deloitte may designate as "CONFIDENTIAL" any of the Documents or information (including testimony at the Examination) that it believes, in good faith, contains confidential and/or proprietary information ("Confidential Material"). A Receiving Person shall not disclose or discuss any Confidential Material with any

person other than "Qualified Persons," as defined in this paragraph, and disclosure to

any Qualified Persons shall only be made in connection with Permitted Purposes.

"Qualified Persons" are limited to Receiving Persons and each of the following:

        a.    the Court and necessary Court personnel ;

        b.    court reporters and any employees and support staff
assisting such court reporters;

*and Review*

        c.    other counsel representing the Committee or members of
the Committee but excluding any counsel representing any member of the
Committee in any litigation or proceeding against Deloitte, ~~and their respective staffs~~;

        d.    any present or former director, officer, principal and
employee of the REC III Defendants, or their respective individual counsel;

        e.    any present or former director, officer, principal and
employee of Toshiba, or their respective individual counsel;

        f.    the Debtors in these cases, their counsel and any present or
former director, officer, principal and employee of the Debtors, or their
respective individual counsel;

        g.    the Committee and relevant representatives of its members;
or,

        h.    any expert or outside consultant retained by or consulted by
a Receiving Person concerning the Permitted Purposes, and any support staff
assisting such expert or consultant;

        and, it is further

        **ORDERED**, that before a Receiving Person discloses Confidential

Material to any Qualified Person listed in sub-paragraphs (c) through (h) above, the

Receiving Person shall obtain from such Qualified Person an executed copy of a Non-

Disclosure Statement in the form attached hereto as Exhibit "A"; and, it is further,

        **ORDERED**, that counsel for Toshiba and the REC III Defendants may

attend and fully participate in the Examination and any continuation or adjournment

thereof; and, it is further

*ORDERED that Qualified Persons shall maintain the confidentiality
of all Confidential Material to the same extent as Receiving Persons pursuant
to this Order and shall not use Confidential Materials for any purpose other
than a Permitted Purpose; and it is further*

ORDERED, that If Confidential Material is included in materials filed with the Court, such Confidential Material shall be filed under seal subject to the rules of the Court. All documents that are filed under seal with the Court shall be filed in a sealed envelope with the following statement:

"This envelope contains CONFIDENTIAL INFORMATION ~subject to an Order of the Court~ and shall be kept under seal until further Order of the Court."

The Clerks are to so accept such documentation filed under seal, and, it is further,

ORDERED, that if Confidential Material is called for in a subpoena or other process, the party to whom the subpoena or other process is directed shall promptly give written notice of this to counsel for Deloitte and shall not produce the documents until the earlier of (i) receipt of prior written consent from Deloitte; (ii) the return date of the subpoena or other process (in the event Deloitte does not object to, seek to quash or seek a protective order from the subpoena); (iii) five business days after a decision on any motion to quash or motion for a protective order or such shorter period as the Court may direct; or (iv) as otherwise required by law, and, it is further,

ORDERED, that any Receiving Person may challenge the designation of any material as "CONFIDENTIAL" by (i) serving written notice of such challenge on counsel for Deloitte and (ii) filing an appropriate motion under the Federal Rules of Civil Procedure challenging the "CONFIDENTIAL" designation. Information that is challenged by way of an appropriate motion shall be considered "CONFIDENTIAL" until (a) the Court grants the motion or (b) Deloitte informs the moving party that the information is no longer to be treated as the "CONFIDENTIAL." A failure to challenge the designation of information as "CONFIDENTIAL" does not constitute an agreement or concession that the information at issue is, in fact confidential.

NYDOCS1-744143.1                                    -4-

ORDERED, that within 90 days following the conclusion of all Permitted Purposes, including any appeals, all material designated as Confidential Material, including copies, shall be returned to Deloitte or shall be destroyed. If the documents are destroyed, a written confirmation of such destruction shall be provided to counsel for Deloitte, and, it is further,

ORDERED, that the provisions of this Order shall survive the conclusion of these proceedings and shall continue in full force and effect. The Court retains jurisdiction to make such amendments, modifications and additions to this Order as it may from time to time deem appropriate or may consider upon motion of any party. The Court also retains jurisdiction to enforce the terms of this Order.

Dated: ~~September~~ Oct. 5 , 2004

_____
The Honorable Mary F. Walrath
Chief United States Bankruptcy Judge